THE FOLLOWING ORDER
IS APPROVED AND ENTERED
AS THE ORDER OF THIS COURT:

DATED: September 24, 2008



Honorable Pamela Pepper
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF WISCONSIN
_____

IN RE:   ANNA MARIE LACKOWSKI,                Case No. 08-21496-pp

         Debtor.                              Chapter 7
_____

**ORDER OVERRULING THE TRUSTEE'S OBJECTION TO
HOMESTEAD EXEMPTION AND ALLOWING EXEMPTION**
_____

I.   FACTUAL BACKGROUND

On February 25, 2008, the debtor filed in the Eastern District of Wisconsin a petition for relief pursuant to Chapter 7. On the first page of her petition, she listed her address as 6628 South 13th Street, Oak Creek, Wisconsin 53154, and listed her county of residence as Milwaukee County. On the second page of the petition, in the box marked "Information Regarding the Debtor–Venue," she marked the box next to the statement, "Debtor has been domiciled or has had a residence, principal place of business, or principal assets in this District for 180 days immediately

1

preceding the date of this petition or for a longer part of such 180 days than in any other District."

On her Schedule A–Real Property, the debtor listed as her "part-time residence" a mobile home at 763 S. Walker Street in Adams, Wisconsin. Adams is located in Adams County, Wisconsin, which is part of the Western District of Wisconsin. She listed the value of her interest in this property as $38,600. On Schedule C–Property Claimed as Exempt, the debtor exempted the entire value of her interest in the Adams mobile home.[1]

On May 16, 2008, the Chapter 7 case trustee filed an objection to the debtor's having claimed a homestead exemption for the Adams County property. The trustee argued that the debtor was not residing in the Adams property at the time she filed her bankruptcy petition. Rather, he asserted, the debtor resided at the 6628 South 13th Street address listed on her petition. He argued that this was the address the debtor listed on her tax returns, her driver's license and her car title, and that she had stated at her § 341 meeting of creditors that she received her mail there. The notice that accompanied this objection informed the debtor that if she did not want the Court to disallow the exemption, she had to respond in writing on or before June 4, 2008.

June 4, 2008 came and went, and the debtor did not file a response to the trustee's objection. Accordingly, the trustee filed an affidavit of no objection per

---

[1] The allowable amount for a homestead exemption under Wis. Stat. § 815.20 is $40,000.

2

Case 08-21496-pp    Doc 65    Filed 09/24/08    Page 2 of 18

Eastern District of Wisconsin local rules, and on June 16, 2008 the Court signed an order disallowing the debtor's homestead exemption.

On June 21, 2008, the debtor filed a motion asking the Court to vacate the order disallowing the exemption. The debtor indicated that she'd told her counsel she wished to contest the trustee's objection, and that her counsel had begun negotiations with the trustee. Counsel had not filed a written objection because she believed that the matter would be settled. Although he did not agree with the chronology of events the debtor recounted, the trustee nonetheless did not oppose the debtor's request to vacate the order disallowing the exemption. Accordingly, the Court conducted an evidentiary hearing on the question of whether the Adams County property did, in fact, constitute the debtor's homestead.

The debtor testified at the evidentiary hearing. She told the Court that much of her family resided in Adams County, and that she considered that property her home. She and her husband had purchased the Adams property about eleven years earlier, and had paid it off three years ago. She testified that she never had owned any other real property.

The debtor testified that she did not own the property at the Oak Creek address listed on her petition–her employer, Barricade Flasher Service, did. The Oak Creek property is located directly across the street from her job. She testified that her employer allowed her to use the Oak Creek address during the work week, but that she did not have a signed, written lease. When the trustee inquired whether the debtor paid "rent" at the Oak Creek address, the debtor hesitated. She

then indicated that she "ma[de] up the difference" to her employer for what the employer paid in taxes. The trustee responded, "So you do pay rent?" The debtor then answered, "Yes." The debtor had used this address for about ten years–around the amount of time she'd been working for Barricade Flasher.

This arrangement helped the debtor in several ways. First, it saved her from having to commute back and forth to Adams each working day. (Adams is approximately 155 miles from Oak Creek.) Second, it allowed her to obtain medical treatment from specialists located in Milwaukee. The debtor testified that she has a number of medical conditions resulting from a defect she suffered at birth, and the specialists who treat her are located in the Milwaukee metropolitan area.

The debtor testified that her employer allowed her to have flexible hours due to her medical condition, but that she usually worked from around 7:00 a.m. to around 3:30 p.m. some four days a week. She testified that when she was not working, she was at the Adams County property–about three days or so out of each week. She also testified that she spent holidays at the Adams property. The debtor testified that her mother, who had passed away around the time the debtor had filed her bankruptcy petition, was buried in Adams County, that she herself owned a burial plot in Adams, and that she planned to be buried there. She testified that she had no family in the Milwaukee area. She further testified that the Friday after she signed her bankruptcy petition, she traveled to the Adams County address, and was there the week after her attorney filed the petition on February 25, 2008. She also returned there after attending her § 341 meeting of creditors on

4

March 24, 2008.

On cross-examination, the trustee pointed out that the debtor's driver's license listed the Oak Creek address, not the Adams address. The debtor responded that this was for "convenience"–she had gone to an office of the Department of Motor Vehicles in the Milwaukee area to obtain the license, because there was not a DMV office convenient to her in Adams.

The trustee presented the debtor with copies of the first pages of her 2005, 2006 and 2007 state tax returns, each of which indicated that the debtor resided in Oak Creek. (*See* Exhibits 4, 5 and 6.) When the trustee asked why the tax returns showed the debtor living in Oak Creek, she responded that her estranged husband had been responsible for preparing the couple's tax returns, and that she did not know why he had used that address when preparing them.

The trustee presented the debtor with a copy of the title on her 1996 Pontiac and a copy of the registration on her 1994 Honda ATV. (*See* Exhibits 2 and 3.) Both of these documents showed the debtor as residing at the Oak Creek address.

The trustee presented the debtor with a copy of her bankruptcy petition and confirmed that the debtor's signature appeared on that petition. (*See* Exhibit 1.) He pointed out to the debtor that the petition she had signed indicated that she resided at the Oak Creek address, and that she had been "domiciled" there for the 180 days preceding the filing of the bankruptcy.

The trustee asked where the debtor and her estranged husband had filed for divorce. The debtor responded that they had filed in Milwaukee County. The

5

trustee also confirmed that the debtor's medical specialists were located in the Milwaukee area. The debtor testified that she banked both in Adams County and in Milwaukee County; the trustee presented her with a copy of one of her direct deposit vouchers from work, which reflected the Oak Creek address. (*See* Exhibit 7.)

In response to questioning from the Court, the debtor indicated that the Oak Creek address contained furniture, wall decorations and plants. She also testified that the Adams address was fully furnished as a home. She reiterated that she considered the Adams address to be her home, and that she was there whenever she was not working.

## II. LEGAL DISCUSSION

Wisconsin Statute section 990.01(14) defines an "exempt homestead" as

> the dwelling, including a building, condominium, mobile home, manufactured home, house trailer or cooperative or an unincorporated cooperative association, and so much of the land surrounding it as is reasonably necessary for its use as a home, but not less than 0.25 acre, if available, and not exceeding 40 acres, within the limitation as to value under s. 815.20, except as to liens attaching or rights of devisees or heirs of persons dying before the effective date of any increase of that limitation as to value.

The amount Wisconsin allows for the homestead exemption is laid out in section 815.20, which states that:

> (1) An exempt homestead as defined in s. 990.01(14) selected by a resident owner and occupied by him or her shall be exempt from execution, from the lien of every judgment and from liability for the debts of the owner to the amount of $40,000, except mortgages, laborers', mechanics' and purchase money liens and taxes and except as otherwise provided. The exemption shall not be impaired by temporary removal

6

> with the intention to reoccupy the premises as a homestead nor by the sale of the homestead, but shall extend to the proceeds derived from the sale to an amount not exceeding $40,000, while held, with the intention to procure another homestead with the proceeds, for 2 years. The exemption extends to land owned by husband and wife jointly or in common or as marital property, and when they reside in the same household may be claimed by either or may be divided in any proportion between them, but the exemption may not exceed $40,000 for the household. If the husband and wife fail to agree on the division of exemption, the exemption shall be divided between them by the court in which the first judgment was taken. The exemption extends to the interest therein of tenants in common, having a homestead thereon with the consent of the cotenants, and to any estate less than a fee.

Wis. Stat. § 815.20.

The first sentence of § 815.20 lays out three questions a debtor must answer in the affirmative in order to avail herself of the $40,000 homestead exemption for a particular property. First–is the property a dwelling of the type described in Wis. Stat. § 990.01(14)? Second, has the debtor "selected" the property as her homestead? And third, does the debtor "occupy" the property?

Under Wisconsin law, there is a presumption that the property a debtor selects as the homestead for purposes of the exemption is, in fact, homestead property. Moore v. Krueger, 507 N.W.2d 155, 159 (Wis.App. 1993) (citing Reckner v. Reckner, 314 N.W.2d 159, 165 (Wis.App.1981)). Courts must construe the homestead exemption liberally "to protect the homeowner." Id. at 157 (citing Reckner v. Reckner, 314 N.W.2d at 162-63 (Wis. App. 1981)).

The presumption in favor of homestead status can be rebutted if the objecting party can show that

> the owner claiming the homestead exemption does not occupy the

7

> premises. When the owner no longer occupies the premises, the burden is on the owner to show that she or he intends to return and reoccupy the premises as a homestead.

Id. at 159. Further, a person can have only one homestead at a time. Id.

In this case, it appears that for the past decade, the debtor has spent time living in two properties–one in Adams County on weekends and at holidays, the other in Milwaukee County during the work week. Because she does not *own* the Oak Creek property, she cannot claim the homestead exemption for it. The only way that the debtor can take advantage of the $40,000 Wisconsin homestead exemption is if this Court determines that the property she *owns*–the Adams County property–is her homestead. For the Court to make that determination, it must find that the debtor can answer the three questions laid out in § 815.20 in the affirmative.

    A.    <u>The Adams County Property is A Dwelling of the Type Described in Wis. Stat. § 990.01(14).</u>

The property the debtor owns in Adams County is a mobile home, not a bricks-and-mortar house. Wis. Stat. § 990.01(14), however, specifically lists a "mobile home" as one of the types of dwellings that one can select to be one's homestead for exemption purposes. Thus, the answer to the first § 815.20 question weighs in favor of finding that the Adams County property is the debtor's homestead.

    B.    <u>The Debtor Has Selected the Adams County Property as Her Homestead.</u>

It appears that the debtor has "selected" the Adams County property as her

homestead, because she has listed her interest in that property as exempt on her bankruptcy schedules.  Indeed, as the Court has noted, the Adams County property is the only property that she can attempt to exempt, because it is the only real property she owns.  Thus, the answer to the second § 815.20 factor weighs in the debtor's favor.

    C.    <u>The Court Finds that the Debtor "Occupies" the Adams County Property.</u>

The bankruptcy courts for both the Eastern and Western Districts of Wisconsin have considered, in various factual contexts, the question of whether a particular debtor "occupies" a property such that the debtor can claim that property as a homestead.

    1.    *Hirsch–Debtor Driven From Property*

In <u>In re Hirsch</u>, 36 B.R. 422 (Bankr.W.D.Wis.1984), Judge Martin considered the question in the context of a debtor who had been driven from her home as a result of the break-up of her marriage.  In <u>Hirsch</u>, the debtor had left the residence she claimed as a homestead in 1980.  She left due to "marital discord," in order to "protect her emotional safety."  <u>Id.</u> at 423.  At the time she left, however, she "hoped for reconciliation and an opportunity to return to the house."  <u>Id.</u> at 423.

As a part of the divorce judgment entered in 1981, the family court allowed the debtor's husband to remain in the residence, along with the couple's minor children, until it was sold.  Between the time the debtor left the house in 1980 and the time it was sold in 1983, the debtor kept many personal property items at the

9

residence, had a key to the residence, and returned various times to pick up household goods or furniture, argue with her husband and "assert her continued desire to live in the house." Id. The debtor's husband permitted her to spend the night at the house on only one occasion, in 1982. Id.

The Hirsch court held that the crucial findings it needed to make were "whether the debtor had an intention to reoccupy the house when she moved out and whether that intention continued until the house was sold." Id. The court found that the debtor "intended to maintain the house as her homestead at the time she left in June of 1980 and, her intention continued up to the time of her bankruptcy and thereafter until the house was sold." Id. The court held that, under Wisconsin law, "the issues of abandonment and creation of homestead are fact-bound questions based primarily on a determination of the owner's intent." Id. (internal quotations omitted). Because the debtor lacked the intention to abandon the residence as her homestead or to create a homestead somewhere else, the court held that she was entitled to claim a homestead exemption in the residence. Id.

        2.     *Bradshaw–Debtor Abandoned Property, Rented to Another*

In contrast, in In re Bradshaw, 125 B.R. 782 (E.D.Wis.1991), Judge Ihlenfeldt considered the occupancy question in the context of a debtor who moved out of property after her spouse's death, and rented that property to someone else. In Bradshaw, the debtor and her husband had purchased a duplex in Racine. They lived in the lower flat, and rented out the upper. The husband passed away some twenty years after the purchase, and the debtor continued to live in the lower flat

after his death. Some three years later, the debtor's son moved in with her, and a year later, the debtor moved out. She moved in with her fiancee, who lived in an apartment in Kenosha. Her son continued to live in the Racine duplex, paying the debtor $350 a month in rent. Id. at 783.

When she filed for bankruptcy in 1990, the debtor claimed a homestead exemption in the Racine duplex. On her petition, the debtor listed the Kenosha apartment as her address. The trustee objected to the debtor claiming the Racine property–which she had not occupied for two years, and which she rented to someone else–as her homestead.

The Bradshaw court observed at the time she filed her bankruptcy petition, the debtor was the owner, but not the occupant, of the Racine property. Id. at 784. The court observed that "[p]hysical occupancy is of course strong evidence of intent to create a homestead." Id. at 785. Because the debtor did not have physical occupancy of the Racine property at the time of the petition, however, and because the Wisconsin statute indicated that the exemption was not impaired by "temporary removal with the intention to reoccupy the premises as a homestead," the court concluded that it needed to determine whether, on the petition date, the debtor was "temporarily absent with an intent to return" to the Racine property. Id. at 784.

In trying to make this determination, the court quoted Pedersen v. Nielsen, 250 N.W. 400 (1933):

> [T]he words "temporary removal" as used in this statute mean "a fixed and temporary purpose, or for a temporary reason, and that in order to prevent an abandonment by

11

> such removal it must be made with the certain and abiding
> intention of returning to the premises and residing therein
> as a homestead."

Id. at 786. The Bradshaw court further noted that "[a] vague intention to return at some future day and reside there will not preserve the homestead." Id. (internal quotations omitted).

The court found that the debtor's intent was crucial to this determination, and that the question of intent "is a question of fact, or of inference to be drawn from the facts." Id. at 784-85 (citing In re Neis, 723 F.2d 584, 589 (7th Cir. 1983)). The Bradshaw court found that the evidence did not support the debtor's assertion that she intended the Racine property as her homestead as of the petition date. The court found that she left that property voluntarily, and had not occupied it for two years prior to the bankruptcy filing. She demonstrated no demonstrable intent to reoccupy the property at any time in the future. She was not forced to leave the premises by outside circumstances, and indicated at her § 341 meeting that she did not know when she would be moving back to that property. Id. at 786.

In the current case, the debtor was not driven from the Adams County property by outside forces. Nor did she leave the Adams County property years ago and fail to return. Nor did she rent the Adams County property to someone else, or allow someone else to live there in her stead. Her testimony and assertions in the pleadings are uncontested to the following extent–she spent weekends, holidays and other periods of time at the Adams County property over the course of a decade, continued to do so at the time she filed her petition, and continues to do so at

12

present.

> 3. *Broesch–Debtor Lived Part-Time in One Property, Part-Time in Another.*

Thus, the question in this case is how a court should determine "occupancy" when the debtor lives part-time in one place and part-time in another. Judge Clevert considered the "occupancy" question in this context some twenty-five years ago in In re Broesch, 34 B.R. 554 (Bankr. E.D.Wis. 1983). The debtor in Broesch was an accountant who practiced in Menomonee Falls. During his four-day work week, he lived in a condominium he owned there. From Friday through Sunday, he lived in a cottage in Minocqua, some 250 miles north of Menomonee Falls. Id. at 555. The debtor and his wife had purchased the Minocqua cottage some five years earlier, and had used it as a weekend and vacation home for their family until the debtor and his wife separated in 1980. At that time, the debtor moved into an apartment in Menomonee Falls with a friend. That arrangement did not work out, and so the debtor bought the Menomonee Falls condominium in 1981. Id.

Around the time the debtor and his wife separated, his business partnership also split up. He began a sole proprietorship in Menomonee Falls. Some two years later, as the result of having a judgment issued against him, the debtor sold his sole proprietorship. As a condition of that sale, he entered into a three-year employment contract. Pursuant to this contract, he was required to work for the purchasers until August 31, 1985. Id. Meanwhile, in the debtor's divorce proceedings, his ex-wife received full ownership of their Menomonee Falls house, and the debtor

13

received full ownership of the Menomonee Falls condominium, the Minocqua cottage, and certain furniture and vehicles. Id.

The debtor testified that after his divorce became final, he went to Minocqua to "investigate" making that his residence. He registered to vote there two days after he filed his bankruptcy petition. His 1982 tax returns–the returns for the year prior to the year he filed for bankruptcy–listed the Minocqua property as his residence. He spent some "2/3 of his three day weekends" in the Minocqua property. Id. His adult son had spent the previous summer living in the property. Finally, the Menomonee Falls condo was under foreclosure, and was sparsely furnished. Id.

Judge Clevert found that the Minocqua cottage constituted the debtor's "homestead" for purposes of the exemption. Id. In so finding, he stated the following:

> First and foremost, [the debtor] claimed to have purchased the condominium apartment as an investment; secondly, it did not have any equity in it; and thirdly, the condominium was on the verge of foreclosure prior to the bankruptcy. Furthermore, [the debtor] never furnished the apartment as a permanent residence, even though he was a man of some means with a house full of furniture in Minocqua. In addition to that, [the debtor] got sole ownership of the cottage in March 1983; he traveled to the cottage in April with the intention of making it is his home; he thereafter moved additional furnishings into the cottage so that his minor children might have ample accommodations when they visited; and he stayed in the cottage almost every weekend between the date his divorce became final and the date he filed bankruptcy. The use of the cottage address on the tax returns [the debtor] filed following his divorce gave further support to rejection of the trustee's position.
>
> The court feels that some comment should be made on the trustee's suggestion that it is unreasonable to allow [the debtor] to claim a

14

homestead which is more than 257 miles from his place of employment. Wisconsin has long preserved homesteads in cases where circumstances have required homeowners to be away for extended periods of time and the homeowners have demonstrated a bona fide intention to reoccupy the premises. *Jervais v. Moe*, 38 Wis. [440] at 443 [(1875)]; *In re Phelan*, 16 Wis. 79 (1862).

There was no reason for this court to reach a different decision in this case merely because [the debtor's] job is 257 miles from his home and it is necessary for him to stay close to work at least four days a week. [The debtor's] living arrangement appears to be temporary and the result of an employment contract that will expire in August of 1985. But even if the arrangement is not temporary and [the debtor] continues to occupy the cottage–albeit on a part-time basis–he would, in the absence of other evidence to the contrary, preserve the exemption.

Id. at 556.

### 4. *The Debtor in This Case "Occupies" the Adams County Property, Albeit on a Part-Time Basis.*

The evidence in the current case indicates that the debtor has spent significant time in two different properties simultaneously for a decade. Both properties are furnished and "livable." The debtor has habitation rights in both. She resides in one of those properties on weekends and holidays, the other during the work week.

There are circumstances that require the debtor to be away from the Adams County property–her job is located in Milwaukee County, and her special medical needs require her to have access to specialists in the Milwaukee area. There does not appear to be any set termination date for these circumstances–she continues to work, and continues to need the medical care that the Milwaukee County specialists provide.

Thus far, the evidence militates in favor of the presumption that the Adams County residence is the debtor's homestead. The trustee argues, however, that if one looks at the various documents he moved into evidence at the hearing, one sees that the debtor actually considers the Milwaukee County property her residence. The debtor listed the Milwaukee County address as her residence on her driver's license, her tax returns, her vehicle titles and registrations, her direct deposit documents for her paycheck–even on her bankruptcy petition. She receives her mail there. She filed for divorce there. The trustee argues that every piece of documentary evidence produced in court, and much of the testimonial evidence presented, demonstrated that the debtor considered the *Milwaukee County* property, and not the Adams County property, to be her residence.

The trustee pointed out at the hearing that, while he placed into evidence seven (7) documentary exhibits, all of which supported the contention that the Milwaukee County address was the debtor's homestead, the debtor had placed not one single document into evidence that supported her argument. The only evidence the debtor presented to demonstrate that she had a homestead anywhere other than in Milwaukee County was her own testimony at the hearing.

The Court agrees with the trustee that the overwhelming majority of the evidence presented to the Court supports the conclusion that the debtor considers the Milwaukee County property to be her "legal residence," and the debtor did not present anything to demonstrate that she considers the Adams County property her legal residence.

16

But § 815.20 does not hinge on where the debtor maintains her "legal residence." Rather, it hinges on whether the debtor "occupies" the property. "Occupancy" is different from "legal residence." While the trustee has demonstrated that the debtor does not consider the Adams County property her legal residence, he has not demonstrated that she does not "occupy" the Adams County property. True, she also "occupies" the Milwaukee County property. But the statute and case law do not prohibit one from occupying two residences–only from claiming both as homesteads. True, the debtor does not "occupy" the Adams County property seven days a week, 365 days a year. But the cases demonstrate that such continuous occupancy is not required. All that the statute requires is that the debtor "occupy" the property.

The Court finds that the debtor's testimony and documentary assertions, viewed in light of the presumption in favor of homestead status and in light of the reasoning laid out in Hirsch, Bradshaw and Broesch, demonstrate that she did "occupy" the Adams County property at the time she filed her petition. The evidence further demonstrates that the debtor intends to continue to occupy that property for the foreseeable future, albeit on a part-time basis. Accordingly, the Court concludes that the debtor can claim the homestead exemption for her interest in the Adams County property.

### III. CONCLUSION

WHEREFORE, the Court hereby **OVERRULES** the trustee's objection to the debtor's claim of the homestead exemption, and **ALLOWS** the debtor's homestead

17

exemption as reflected on her Schedule C.

# # # # #